Harry A. REID et al., Plaintiffs,

v.

CITY OF NORFOLK, VIRGINIA et al., Defendants.

Civ. A. No. 2953.

United States District Court
E. D. Virginia,
Norfolk Division.

Argued Oct. 13, 1959.

Decided Jan. 12, 1960.

Leonard W. Holt, Norfolk, Va. (E. A. Dawley, Jr., Joseph A. Jordan, Jr., and Henry H. Jones, Norfolk, Va., on brief), for plaintiffs.

A. S. Harrison, Jr., Atty. Gen., of Virginia, and R. D. McIlwaine, III, Asst. Atty. Gen., of Virginia (Leonard H. Davis, City Atty., of City of Norfolk, Norfolk, Va., on brief), for defendants.

Before SOBELOFF and HAYNSWORTH, Circuit Judges, and HOFFMAN, District Judge.

WALTER E. HOFFMAN, District Judge.

In this class action plaintiffs seek a declaration of their rights and injunctive relief to restrain the enforcement of § 18–327 and § 18–328 of the Code of Virginia, 1950. The language of the two statutes appears in the footnote [1] but,

---

1. "§ 18–327. Duty to separate races at public assemblage.—

"Every person, firm, institution or corporation operating, maintaining, keeping, conducting, sponsoring or permitting any public hall, theatre, opera house, motion picture show or any place of public entertainment or public assemblage which is attended by both white and colored persons shall separate the white race and the colored race and shall set apart and designate in each such public hall, theatre, opera house, motion picture show or place of public entertainment or public assemblage certain seats therein to be occupied by white persons and a portion thereof, or certain seats therein, to be occupied by colored persons and any such person, firm, institution, or corporation that shall fail, refuse or neglect to comply with the provisions of this section shall be guilty of a misdemeanor and upon conviction thereof shall be fined not less than one hundred dollars nor more

for brevity, they may be denominated as mandatory segregated seating statutes.

The facts may be briefly stated, The four plaintiffs are citizens, residents and taxpayers of the City of Norfolk and State of Virginia. Three of the plaintiffs are Negroes. One (Abbot) is a white person.[2] The defendant, City of Norfolk, owns and operates the Norfolk City Arena and Center Theatre and, on occasions, leases the facilities in question to various private persons and public organizations for recreational functions, public assemblages, etc. The Mayor, City Manager, Director of Public Safety, Director of Public Works, Manager of the Arena and Center Theatre, as well as the Governor of Virginia, have been named parties defendant to this action but, as we view it, it is unnecessary to discuss the relationship of these parties to the controversy, although, by their answer, defendants admit that the City Manager has control of the occupancy of the Arena and Theatre and the City Manager has delegated the renting of said facilities to the Director of Public Safety to the extent permitted by § 34–9 of the Code of the City of Norfolk, Virginia, 1950.

Defendants admit that, under color of law, policy, custom and usage, and especially by virtue of § 18–327 of the Code of Virginia, 1950, they have segregated, and required the segregation of, persons by race in all public gatherings held in the Arena and Theatre for a period of years, and that they are now requiring such segregation. They further state that they will continue such compliance with the state law. They insist, however, that plaintiffs and the class they represent have not suffered, nor will they in the future suffer, irreparable harm, damage and injury.[3]

From the allegations of the complaint which, for the purposes herein stated we accept as true, the four plaintiffs purchased, on December 15, 1958, tickets allowing them to attend a function being held at the Arena. They took the seats designated by the purchased tickets. Within a matter of minutes the plaintiffs

---

than five hundred dollars for each offense."

"§ 18–328. Failure to take space assigned in pursuance of preceding section.—

"Any person who fails, while in any public hall, theatre, opera house, motion picture show or place of public entertainment or public assemblage, to take and occupy the seat or other space assigned to them in pursuance of the provisions of the preceding section by the manager, usher or other person in charge of such public hall, theatre, opera house, motion picture show or place of public entertainment or public assemblage or whose duty is to take up tickets or collect the admission from the guests therein, or who shall fail to obey the request of such manager, usher, or other person, as aforesaid, to change his seat from time to time as occasion requires, in order that the preceding section may be complied with, shall be deemed guilty of a misdemeanor and upon conviction thereof shall be fined not less than ten dollars nor more than twenty-five dollars for each offense. Furthermore such person may be ejected from such public hall, theatre, opera house, motion picture show or other place of public entertainment or public

assemblage by any manager, usher or ticket taker, or other person in charge of such public hall, theatre, opera house, motion picture show or place of public entertainment or public assemblage, or by a police officer or any other conservator of the peace, and if such person ejected shall have paid admission into such public hall, theatre, opera house, motion picture show or other place of public entertainment or public assemblage, he shall not be entitled to a return of any part of the same."

These statutes have existed for many years and are not the product of resistance efforts of recent date.

2. The action was instituted on May 13, 1959. On the following day the white plaintiff (Abbot) filed his motion to withdraw as a party plaintiff. At a pre-trial conference before the resident judge on June 18, 1959, the motion was granted with the concurrence of counsel.

3. In argument before this Court on preliminary matters, it was conceded that defendants have "closed their eyes" to alleged violations which have existed with respect to public assemblages such as preaching missions, political gatherings, as well as all private functions.

were ordered by an usher and police officer to change their seats to that part of the Arena reserved for members of the respective races or, in the alternative, to leave the Arena or be subjected to arrest if they refused to move. The usher and police officer advised plaintiffs that they were relying upon the state law prohibiting members of both races from being seated alongside each other. The plaintiffs then left the Arena; no arrests were made; nor were plaintiffs forcibly ejected. It is further alleged, but not admitted, that like incidents have occurred at other times and places under like circumstances, but no specific instances have been mentioned.

The defendants have filed a motion to dismiss alleging, in substance, that a three-judge district court should not exercise jurisdiction for (1) the action is to restrain the enforcement of certain state criminal statutes, (2) this is not a case involving clear and imminent irreparable injury which would justify the interference by a federal court in the exercise of discretionary equity powers, (3) no actual controversy exists, and (4) the state courts should initially be given an opportunity to pass upon the validity of the controverted statutes in light of the many decisions pronounced since Brown v. Board of Education, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873, and other related cases.

▬ The request for an injunction restraining the enforcement, operation or execution of a state statute is a prerequisite for action by a three-judge district court. 28 U.S.C.A. § 2281. As a corollary to such action, there must be shown that plaintiffs will sustain irreparable injury which is clear, imminent and substantial, unless relief is granted. We are not prepared to say at this time that the enforcement of mandatory segregated seating statutes at recreational functions is essentially of "immediate" interest so as to constitute irreparable injury requiring the interference by a federal court by way of injunction restraining the enforcement of criminal statutes enacted by the Commonwealth of Virginia. More especially is this true where it appears that plaintiffs have an appropriate remedy in the state court by way of declaratory judgment under §§ 8–578 to 8–585 of the Code of Virginia, 1950, in which parties are entitled to a declaration of rights[4] in proper cases.

We are not unmindful of the decisions of federal courts in public school cases, the public bus transportation cases, and matters involving the outright denial to Negroes of entrance to, or admission in, public places owned, operated or leased by governmental authorities with funds provided by taxpayers, such as parks, golf courses, bathing beaches, etc. The public school cases furnish abundant evidence of irreparable injury. Similarly, the public transportation cases strike at the right to earn a means of livelihood[5] and the ability to go from place to place, where again immediate irreparable injury is clearly established. In absolutely denying the right of the member of one race to enter property owned, operated or leased by governmental authorities, the denial may be so flagrant and discriminatory as to compel action to prevent imminent irreparable damage by the continuance of such practices. The matter now before us does not present such a situation.

Indeed, it may be that this controversy would not call for a three-judge district court in any event, for, if the statutes are plainly unconstitutional and require no

4. The venue for such action lies in the City of Norfolk unless plaintiffs elect to name the Governor as a party defendant, in which event the suit must be instituted in the City of Richmond. § 8–579(8), § 8–38(9), Code of Virginia, 1950.

5. In Dorsey v. State Athletic Commission, D.C., 168 F.Supp. 149, motion to affirm granted, 359 U.S. 533, 79 S.Ct. 1137, 3 L.Ed.2d 1028, a three-judge district court held unconstitutional on its face a statute which prohibited athletic contests between Negroes and Whites, where plaintiff was a professional prizefighter.

state court interpretation, jurisdiction may exist in the regularly constituted district court. The exercise of jurisdiction by a single judge would, however, still be discretionary, and plaintiffs would again be confronted with the problem of irreparable injury and injunctive relief restraining the enforcement of state criminal statutes. Assuming that no injunctive relief is demanded, it does not follow that a federal court must exercise equitable powers in all cases, where yielding to the principles of comity would not essentially deprive the litigants of rights which could be asserted and determined by a state court within a reasonable period of time. Cf. Dawley v. City of Norfolk, Virginia, 4 Cir., 260 F.2d 647, certiorari denied 359 U.S. 935, 79 S.Ct. 650, 3 L.Ed.2d 636.

■ For many years it has been an established principle of law that courts of the United States have no power to enjoin state officers from instituting criminal actions *unless* (1) it is absolutely necessary for protection of constitutional rights, *and* (2) extraordinary circumstances exist where the danger of irreparable loss is both great and immediate. Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714; Fenner v. Boykin, 271 U.S. 240, 46 S.Ct. 492, 70 L.Ed. 927; Spielman Motor Sales Co. v. Dodge, 295 U.S. 89, 55 S.Ct. 678, 79 L.Ed. 1322; Beal v. Missouri Pacific R. Corp., 312 U.S. 45, 61 S.Ct. 418, 85 L.Ed. 577; Railroad Commission of Texas v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971; Watson v. Buck, 313 U.S. 387, 61 S.Ct. 962, 85 L.Ed. 1416; Douglas v. City of Jeannette, 319 U.S. 157, 63 S.Ct. 877, 87 L.Ed. 1324; Stefanelli v. Minard, 342 U.S. 117, 72 S.Ct. 118, 96 L.Ed. 138.

■ It is argued that the doctrine pronounced in the foregoing cases has been impliedly overruled by later decisions involving public transportation in which federal court intervention was sought. Evers v. Dwyer, 358 U.S. 202, 79 S.Ct. 178, 3 L.Ed.2d 222; Browder v. Gayle, D.C., 142 F.Supp. 707, affirmed without opinion, 352 U.S. 903, 77 S.Ct. 145, 1 L.Ed.2d 114; Morrison v. Davis, 5 Cir., 252 F.2d 102, certiorari denied 356 U.S. 968, 78 S.Ct. 1008, 2 L.Ed.2d 1075. Our attention is also directed to Crown Kosher Super Market of Mass., Inc. v. Gallagher, D.C., 176 F.Supp. 466, in which it is said that a three-judge district court may not decline, as a matter of discretion, to take jurisdiction of an action to enjoin the operation of a state criminal statute resulting ·in the denial of civil rights of a citizen where state officials intend to enforce the statute unless and until its constitutionality has been finally adjudicated.[6] As indicated, Crown Kosher falls within the class of cases touching upon the right of a citizen to earn a means of livelihood. While we are in complete accord with the view that one should not be required to subject himself to the embarrassment of an arrest as a prerequisite to testing his constitutional rights, we nevertheless feel that, in this proceeding, where plaintiffs may resort to an efficient legal remedy by way of a declaratory judgment proceeding in the state court, there is no clear showing of extraordinary circumstances indicating great and immediate danger of irreparable loss which justifies the intervention of a three-judge district court. Furthermore, the Supreme Court has been confronted with an opportunity to expressly overrule the line of cases restricting the power of federal courts from enjoining state officers in enforcing state criminal statutes where civil rights are involved, but has failed to take such action. Without a definitive solution of these contentions, we think sufficient discretion is left us to defer action where there is a procedure available for the prompt and orderly determination of the constitutionality

---

**6.** Compare Williams v. Dalton, 6 Cir., 231 F.2d 646, 648, an opinion by Circuit Judge Stewart, now a member of the United States Supreme Court, wherein it is said that "accepted principles governing equitable and declaratory relief are no less applicable where such relief is sought under the Civil Rights Act."

of the statutes in the civil courts of Virginia.

Plaintiffs rely upon the brief statement in *N. A. A. C. P. v. Bennett*, 360 U.S. 471, 79 S.Ct. 1192, 3 L.Ed.2d 1375, as authority for the proposition that a reference by a federal district court to a state court should not be *automatically* made where the validity of a state statute, challenged under the United States Constitution, is *properly* before a United States District Court. We do not believe that Bennett is applicable as the issue of irreparable damage was not considered—indeed, the district court apparently assumed that the danger of irreparable loss was both great and immediate.

Our attention is directed to the fact that the constitutionality of the statutes under attack is, of recent date, the subject of state court action. On January 13, 1958, the Circuit Court of Arlington County, Virginia, held that § 18–327 of the Code of Virginia, 1950, was unconstitutional.[7] There is now pending in the same court a declaratory judgment action in which the constitutionality of §§ 18–327, 18–328 is directly challenged.[8] Moreover, in *Bissell v. Commonwealth*, 199 Va. 397, 100 S.E.2d 1, the Supreme Court of Appeals of Virginia, in a similar case, found that the warrant of arrest was defective in that it did not properly charge a crime and, for this reason, the highest court in Virginia did not reach the constitutional question. It is inevitable, however, that the state courts will ultimately determine the constitutionality of these statutes. To adhere to the principles of comity would avoid any hazard of disrupting federal-state relations in a field already disturbed by friction. As was said by Mr. Justice Black in *Watson v. Buck*, supra [313 U.S. 387, 61 S.Ct. 966]:

"Federal injunctions against state criminal statutes, either in their entirety or with respect to their separate and distinct prohibitions, are not to be granted as a matter of course, *even if such statutes are unconstitutional.*"

We note in passing that the United States Supreme Court maintains the same right, and observes the same duty, to review a decision of the highest court of a state as it does in considering the actions of a federal court. It is equally the duty of a state court to protect the rights of its citizens arising under the Constitution of the United States. To require these plaintiffs to pursue their remedies in the state court on the issues here involved is, at best, a slight sacrifice which must yield to the principles of comity where irreparable damage is not clearly shown to be immediate.

We will deny defendants' motion to dismiss and retain the case upon the docket, postponing the exercise of jurisdiction to enable plaintiffs, should they be so advised, to institute an action in the state court for declaratory judgment, in which proceeding we assume that defendants will cooperate, to obtain a prompt decision of the merits if the case is properly presented. At the time of argument, and in the brief, defendants abandoned the contention that no actual controversy exists under the state of facts here presented; we assume that defendants will make a like concession in the state court. To appropriately test the constitutionality of the statutes in a civil court of Virginia, we see no necessity of plaintiffs being required to subject themselves to criminal process, but if the decision is grounded upon this point, we may then entertain a motion to exercise jurisdiction.

An order will be entered staying further proceedings herein for a period of sixty (60) days to enable the plaintiffs, and the class they represent, to institute an appropriate action in the state court. If no action is taken by the plaintiffs within said period of sixty (60) days, this cause will stand dismissed with costs

---

7. Commonwealth v. Taylor, Crim. No. 2024.

8. Community Council for Social Progress v. E. J. Braun, et al., Chancery No. 9886, argued October 13, 1959.

774

awarded to defendants. If the issue is properly presented and there is a decision on the merits in that case, these proceedings will be further stayed until such time as the parties have exhausted their remedies available through state channels, including, if necessary, an application for certiorari to the Supreme Court of the United States. If such an action is properly instituted by the plaintiffs, but it should appear that the constitutionality of the statutes will not be determined therein, this court will then consider what further action may be appropriate.

Counsel for defendants will prepare and present order.