William L. GRIFFIN, Gwendolyn Greene, Ronyl Stewart, Dorothy Mann, Clyde R. McDowell, and Kay Freeman

v.

Francis J. COLLINS, individually and as Deputy Sheriff in and for Glen Echo Park, Montgomery County, Maryland, Luke J. Bennett, Jr., individually and as Sheriff in and for Montgomery County, Maryland, Rekab, Inc., a Maryland corporation, Kebar, Inc., a Maryland corporation.

Civ. No. 12308.

United States District Court
D. Maryland.

Aug. 25, 1960.

Charles H. Duncan, Washington, D. C., Joseph H. Sharlitt, Chevy Chase, Md., and Juanita J. Mitchell, Baltimore, Md., for plaintiffs.

William G. Clark, Silver Spring, Md., Richard W. Case and Roger D. Redden, Baltimore, Md., for defendants Collins, Rekab, Inc., and Kebar, Inc.

C. Ferdinand Sybert, Atty. Gen. of Maryland, and Stedman Prescott, Jr., Deputy Atty. Gen. of Maryland, for defendant Bennett.

THOMSEN, Chief Judge.

This is a class action to prevent the arrest for trespass of Negroes who visit the Glen Echo Amusement Park in Montgomery County, Maryland, in opposition to the all-white policy of its owner and operator. Plaintiffs are Negroes, some of whom were arrested by the defendant Collins, and some of whom claim that they have been prevented from visiting the Park by threats of arrest. Defendants are Francis J. Collins, individually and as Deputy Sheriff in and for Glen Echo Park, Montgomery County, Maryland, Luke J. Bennett, Jr., individually and as Sheriff in and for Montgomery County, Maryland, Rekab, Inc., and Kebar, Inc., Maryland corporations, respectively the owner and the operator of the Park. The case is before this court on the motion of defendants other than Sheriff Bennett to dismiss the complaint or to stay further proceedings and plaintiffs' motion for a preliminary injunction. Plaintiffs have also filed a motion for summary judgment, a stipulation of

certain facts has been filed, and both parties have filed affidavits in support of their several motions. Defendants argue that the case should not be disposed of on motion for summary judgment, contending that certain material facts are disputed and stating that they may wish to present some evidence on the merits if their motion to dismiss is denied. Both sides are agreed, however, that this court may consider the stipulation of facts and the affidavits in passing on the motion to dismiss the complaint and the motion for preliminary injunction.

## Facts

The following facts are stipulated:

"1. The plaintiffs are Negroes, are citizens of the United States and presently reside in Washington, D. C.

"2. At all times pertinent to this action, Rekab, Inc. was the owner of the premises known as Glen Echo Amusement Park (hereinafter referred to as "Park") and Kebar, Inc. was the holder of a lease from Rekab, Inc. under the terms of which the said Kebar, Inc. operated the Park. These corporations are duly organized and exist under the laws of the State of Maryland. Operation of the Park is subject to the customary fire, health and related regulations. The Park is located along the Potomac River in Montgomery County, Maryland, approximately 2.5 miles from the Maryland-District of Columbia line. It is the largest amusement park in the metropolitan Washington area and is directly accessible by public transportation within the area.

"3. Defendant Francis J. Collins has, at all times pertinent to this action been employed by the National Detective Agency, charged under the terms of this employment with serving as supervisor of the guard force at the Park.

"4. The National Detective Agency is employed by Rekab, Inc. and by Kebar, Inc. to provide a force of guards at the Park.

"5. The duties of the guard force at the Park include maintaining order within the Park and enforcing the poli-

cies of the owners and operators of the Park with regard thereto.

"6. At all times pertinent to this action the defendant Collins held a commission from the State of Maryland as a Special Deputy Sheriff for Montgomery County, Maryland.

"7. Defendant Kebar, Inc., as operator of the Park, advertises publicly in the Washington metropolitan area. These advertisements do not indicate who, if anyone, would be excluded from use of the Park.

"8. The Park is a recreational facility privately owned and operated for profit as a commercial enterprise. It has at all times been operated on a well-maintained basis catering primarily to those persons living in the nearby metropolitan Washington area, with the amusement facilities of the Park being directed largely toward the entertainment of children.

"9. The owners and operators of the Park feel that the maintenance of their Park in its present condition as a private business requires a business policy which does not permit Negroes to attend the Park. Accordingly, Negroes who seek admission to the Park are excluded solely on account of their race. This policy is presently in effect.

"10. Persons employed by the National Detective Agency and assigned to the Park, including Francis J. Collins, have been advised, by the owners and operators of the Park, of the business policy of the Park with respect to the admission of Negroes.

"11. On or about July 1, 1960, Francis J. Collins, attired in the uniform customarily worn by him as supervisor of the National Detective Agency guards, after consulting the Park Office and the agents, servants and employees of Rekab, Inc. and Kebar, Inc., did advise William L. Griffin, Gwendolyn Greene and Ronyl Stewart, who had entered the Park premises with knowledge of the business policy of the Park owners and operators with respect to the admission of Negroes to the Park, that pursuant to the policy of

the Park they were not welcome. The behavior of said plaintiffs at all times was orderly and peaceful. Defendant Collins requested them to leave and further advised them that if they did not leave peaceably within a reasonable time, they would be subject to arrest for trespass. When they refused so to do, he, acting pursuant to his authority as a Special Deputy Sheriff for Montgomery County, Maryland, did arrest the aforenamed persons, plaintiffs herein, for violation of Article 27, Section 577 of the Annotated Code of Maryland (1957 ed.) which alleged violations are currently pending before the Circuit Court for Montgomery County, Maryland. At the time of their arrest, plaintiffs Griffin and Greene had in their possession 'ride' tickets obtained for them by white companions. These tickets bore the following legend: 'Management reserves the right to revoke the privileges granted by this ticket by refunding its purchase price.'

"12. Admission to the Park is free. Tickets for use within the Park are obtainable at various booths located within the Park. It is the practice within the Park that these tickets may be transferred among those persons admitted to the Park. Pursuant to the policy of the owners and operators of the Park not to admit Negroes to the Park premises, it is the policy of the owners and operators of the Park not to sell tickets to Negroes for use within the Park and not to honor tickets for use in the Park held by Negroes, however obtained.

"13. It has been the business policy of Rekab, Inc. and Kebar, Inc., since they acquired the ownership of the Park in 1955, to have a Special Deputy Sheriff on the premises at all times to insure the orderly operation of the Park."

The complaint also alleges:

"9. Defendant Collins, acting for and pursuant to the directions of defendants Rekab and/or Kebar, has implemented and enforced the racially discriminatory policies of the defendant corporations at Glen Echo Park. Defendant Bennett, having knowledge that defendant Collins was using his state authority to implement and enforce the racially discriminatory policies of defendants Rekab and Kebar, continued to allow defendant Collins to possess and exercise that authority for such purposes."

"11. Defendants Rekab and Kebar, on numerous occasions during the preceding twelve months, have placed and caused to be placed in newspapers, on billboards and on radio and television, advertisements of Glen Echo Park directed to the residents and public-at-large of the metropolitan Washington area. Said advertisements in substance invited members of the public to use and enjoy the recreational facilities of Glen Echo Park. Said advertisements did not state that the park maintains a policy of racial discrimination, nor did they indicate that members of the Negro race otherwise would be unwelcome."

"14. Defendants, individually or acting through their employees, agents and servants, have told plaintiffs and others similarly situated, and have publicly announced their intention of maintaining their policy of racial discrimination by causing the arrest, under color of law and by use of state authority, of all Negroes who attempt to enter Glen Echo Park or use its facilities.

"15. The statements and announcements above referred to are part of a continuing conspiracy by all defendants to maintain racial discrimination, enforced by use of governmental action and authority, at Glen Echo Park.

"16. The conspiracy above described and the arrests and acts made and taken pursuant thereto, are carried out under color of statutes, ordinances, regulations, customs or usages of the State of Maryland.

"17. The above described acts of defendants are unlawful in that they constitute state enforced racial discrimination in a place of public accommodation —more particularly, the sole public amusement park in the metropolitan area of the District of Columbia—in contravention of plaintiffs' rights secured by the equal protection and due process

clauses of the Fourteenth Amendment to the Constitution of the United States and by the laws of the United States, including, among others, the provisions of 42 U.S.C. §§ 1982 and 1983."

The complaint ends with prayers that this court:

"A. Adjudge and declare that the defendants' acts in utilizing governmental authority and powers of the state and the sanctions of state law to aid, support and enforce the denial to plaintiffs, solely because of their race, of admission to Glen Echo Park and enjoyment of its facilities, are in violation of plaintiffs' rights under the Constitution and laws of the United States;

"B. Issue an injunction, permanently and pendente lite, restraining and preventing defendants and each of them, and the officers, employees, agents and servants of the corporate defendants, from doing any and all acts, including, without limiting the generality of the foregoing, the threatening, making or causing to be made any arrests under the criminal trespass or any other statutes of the State of Maryland which are designed or have the effect of preventing plaintiffs or any other individuals similarly situated from peaceably entering the public amusement park known as 'Glen Echo Park' in Montgomery County, Maryland, from peaceably using and enjoying or attempting to use and enjoy the facilities located in said public amusement park, from peaceably entering into or attempting to enter into contracts with persons in said amusement park for the use and enjoyment of the facilities located therein, and from peaceably purchasing or attempting to purchase articles of personal property on sale in said public amusement park, solely on the ground of their race or color; and

"C. Grant such other and further relief as to the Court may seem just and proper."

The affidavits attached to the motion for summary judgment state that certain of the plaintiffs are "genuinely apprehensive of an arrest and, for that reason, have not subjected [themselves] to the possibility of an arrest by attempting to use the park facilities", although they and their families desire to enjoy the facilities of the Park.

The criminal charges against plaintiffs Griffin, Greene and Stewart are set for trial before a jury in that Court on September 12, 1960. The Park will close on September 11, 1960, and will not reopen until April, 1961.

## Discussion

Art. 27, sec. 577 of the Maryland Code, for the alleged violation of which plaintiffs Griffin, Greene and Stewart were arrested and are now being prosecuted, reads as follows:

"§ 577. *Wanton trespass upon private land.*

"Any person or persons who shall enter upon or cross over the land, premises or private property of any person or persons in this State after having been duly notified by the owner or his agent not to do so shall be deemed guilty of a misdemeanor, and on conviction thereof before some justice of the peace in the county or city where such trespass may have been committed be fined by said justice of the peace not less than one, nor more than one hundred dollars, and shall stand committed to the jail of county or city until such fine and costs are paid; provided, however, that the person or persons so convicted shall have the right to appeal from the judgment of said justice of the peace to the circuit court for the county or Criminal Court of Baltimore where such trespass was committed, at any time within ten days after such judgment was rendered; and, provided, further, that nothing in this section shall be construed to include within its provisions the entry upon or crossing over any land when such entry or crossing is done under a bona fide claim of right or ownership of said land, it being the intention of this section only to prohibit.

any wanton trespass upon the private land of others."

This statute was adopted in 1900. Its application to a situation similar to the one here involved has never been presented to the Maryland Court of Appeals. However, in 1959, several Negroes who visited Gwynn Oak Amusement Park in Baltimore County in opposition to the policy of the management were arrested by an officer summoned by the management and charged with violation of Art. 27, sec. 123, which deals, *inter alia*, with disorderly conduct in a place of "public resort or amusement". They were convicted by Judge Menchine, sitting without a jury, in the Circuit Court for Baltimore County; an appeal from that conviction is now pending in the Court of Appeals of Maryland. In his opinion Judge Menchine said:

"In Madden v. Queens County Jockey Club [296 N.Y. 249], 72 N.E. 2d 697 [1 A.L.R.2d 1160] (Court of Appeals of New York), it was said at Page 698:

"'At common law a person engaged in a public calling, such as innkeeper or common carrier, was held to be under a duty to the general public and was obliged to serve, without discrimination, all who sought service. * * * On the other hand, proprietors of private enterprises, such as places of amusement and resort, were under no such obligation, enjoying an absolute power to serve whom they pleased. * * *

"'The common-law power of exclusion, noted above, continues until changed by legislative enactment.'

"The ruling therein announced was precisely adopted in the case of Greenfeld v. Maryland Jockey Club, 190 Md. 96 [57 A.2d 335], the Court of Appeals, stating at Page 102 of its opinion that:

"'The rule that, except in cases of common carriers, innkeepers and similar public callings, one may choose his customers is not archaic.'"

The rule cited by Judge Menchine has long been the rule in this circuit and this district. See Williams v. Howard Johnson's Restaurant, 4 Cir., 1959, 268 F.2d 845; Slack v. Atlantic White Tower System, Inc., D.C.D.Md.1960, 181 F.Supp. 124, and cases cited therein. "The action inhibited by the first section of the Fourteenth Amendment is only such action as may fairly be said to be that of the States. That Amendment erects no shield against merely private conduct, however, discriminatory or wrongful." Shelley v. Kraemer, 1947, 334 U.S. 1, 13, 68 S.Ct. 836, 842, 92 L.Ed. 1161. Cf. Dawson v. Mayor & City Council of Baltimore, 4 Cir., 1955, 220 F.2d 386, affirmed 350 U.S. 877, 76 S.Ct. 133, 100 L.Ed. 774.

Plaintiffs concede the right of the corporate defendants, as owners and operators of Glen Echo Park, to serve or refuse to serve whomever they please, and concede that said defendants like other property owners or operators of a private business may use "self-help" to eject a Negro who insists on remaining on the premises after being told to leave. Counsel argue, however, that if the proprietor of a business calls a police officer, deputy sheriff, or other state official to remove or arrest the Negro, such action or arrest would (1) violate the Equal Protection and Due Process Clauses of the Fourteenth Amendment, which forbid state-imposed racial discrimination in the field of recreational activity, and (2) deprive the Negro of his rights under 42 U.S. C.A. §§ 1981 and 1983.

Plaintiffs have cited no authority holding that in the ordinary case, where the proprietor of a store, restaurant, or amusement park, himself or through his own employees, notifies the Negro of the policy and orders him to leave the premises, the calling in of a peace officer to enforce the proprietor's admitted right would amount to deprivation by the state of any rights, privileges or immunities secured to the Negro by the Constitution or laws. Granted the right of the pro-

prietor to choose his customers and to eject trespassers, it can hardly be the law, as plaintiffs contend, that the proprietor may use such force as he and his employees possess but may not call on a peace officer to enforce his rights.

In the instant case, however, it is alleged that defendants went further, and that as a result of previous concerted action by defendants—the Sheriff of Montgomery County, the owner and the operator of the Park, and Collins, a guard provided by the National Detective Agency—Collins was appointed a Special Deputy Sheriff for Montgomery County.[1] It is stipulated by all the parties that "the duties of the guard force at the Park include maintaining order within the Park and enforcing the policies of the owners and operators of the Park with regard thereto".

The allegations and stipulations in this case present a set of facts as to the legal effect of which I intimate no opinion at this time, except that the case should be heard on its merits on all the facts either side wishes to present, and not disposed of on a motion for preliminary injunction, a motion to dismiss, or a motion for summary judgment.

The questions here presented will be involved in the trial of the criminal charges, now set for hearing in the Circuit Court for Montgomery County within three weeks. Under all the circumstances, I conclude that I should postpone any further action in this case until after the disposition of the criminal charges, subject to the right of either party to request an earlier hearing if the disposition of those charges should be delayed. The court should try to avoid the situation which developed in Wolfe et al. v. State of North Carolina, 364 U.S. 177, 80 S.Ct. 1482. See also Reid v. City of Norfolk, Va., D.C.E.D.Va. 1960, 3-judge court, 179 F.Supp. 768; Harrison v. N. A. A. C. P., 1959, 360 U.S. 167, 79 S.Ct. 1025, 3 L.Ed.2d 1152. Cf.

N. A. A. C. P. v. Bennett, 1959, 360 U.S. 471, 79 S.Ct. 1192, 3 L.Ed.2d 1375.

Defendants' motion to dismiss and plaintiffs' motions for preliminary injunction and for summary judgment are hereby denied, without prejudice.

---

[1]. At the hearing counsel for plaintiffs stated that plaintiffs were not seeking to recover damages for a conspiracy, but counsel did not withdraw the allegation of concerted action between defendants contained in the complaint.