## MICHIGAN PACKING CO. v. MESSARIS.

1. FRAUDULENT CONVEYANCES—BULK MORTGAGE ACT—RESTAURANT FIXTURES.

   Restaurant equipment, such as chairs, tables, dishes, stoves, cooking utensils, etc., held, "fixtures" within meaning of bulk mortgage act (2 Comp. Laws 1929, § 9548), requiring notice to creditors of mortgagor.

2. EVIDENCE—JUDICIAL NOTICE—RESTAURANTS.

   It is matter of common knowledge that, in conduct of restaurant business, certain items of food are retailed for consumption by customers upon premises in exactly same form as purchased by restaurateur for use in his business.

3. FRAUDULENT CONVEYANCES—BULK MORTGAGE ACT APPLICABLE TO RESTAURANTS.

   Dealer furnishing articles of food to restaurateur, which are retailed for consumption by customers upon premises in exactly same form as purchased, is entitled to same protection under bulk mortgage act (2 Comp. Laws 1929, § 9548), as though furnished to retail grocer.

4. SAME—MORTGAGE GIVEN WITHOUT NOTICE TO CREDITORS VOID AS
    TO THEM.
    Chattel mortgage covering restaurant fixtures, which was given
        without notice to mortgagor's creditors, as required by bulk
        mortgage act (2 Comp. Laws 1929, § 9548), is void as to such
        creditors furnishing food supplies.

Appeal from Wayne; Brown (William B.), J., presiding. Submitted January 8, 1932. (Docket No. 81, Calendar No. 35,813.) Decided March 2, 1932.

Bill by Michigan Packing Company, a Michigan corporation, against George Messaris and others to declare void a chattel mortgage covering restaurant fixtures and equipment. Decree for plaintiff. Defendant Sarasohn appeals. Affirmed.

*Paul Bairas,* for plaintiff.

*Morris Garvett* (*Donald J. Mazer,* of counsel), for defendant Sarasohn.

NORTH, J. Under stipulated facts this case presents a single question of law, to wit: As between the purchaser at an execution sale and the purchaser at a chattel mortgage sale covering restaurant equipment (chairs, tables, dishes, stoves, cooking utensils, etc.), which takes legal title; it being conceded that the indebtedness back of the execution was for food supplies furnished the restaurateur (mortgagor), existed at the time the chattel mortgage was given, and exceeded in amount the value of the chattel mortgage property? Determination necessitates construction of the following statute:

"Every mortgage or conveyance intended to operate as a mortgage of the whole or any part of a stock of merchandise or merchandise and fixtures,

pertaining to the conducting of said business which shall hereafter be made without notice to the creditors of the mortgagor as herein provided, shall be void as against said creditors." 2 Comp. Laws 1929, § 9548 (note amendment, Act No. 198, Pub. Acts 1931).

The statute contains provision for notice to the mortgagor's creditors. It is admitted that no notice was given, but appellant contends that the statute does not apply to the business of operating a restaurant.

The exact question has not heretofore been determined in this court. The statute is a recent enactment, but the terms of the bulk sales law (2 Comp. Laws 1929, § 9545) are so strikingly similar that decisions thereunder and under like statutes of other States are pertinent. Some States having similar statutes have held they do not apply to sales of restaurant properties. *Farmers & Drovers Nat. Bank* v. *Hannaman,* 115 Kan. 370 (223 Pac. 478); *Gallup* v. *Rhodes,* 207 Mo. App. 692 (230 S. W. 664). In some States the statute does not include "fixtures," but covers merchandise only, and decisions seem to be controlled thereby. See *Muskogee Wholesale Grocery Co.* v. *Durant,* 49 Okla. 395 (153 Pac. 142), which points out that the Michigan statute covers "fixtures." In some other jurisdictions where similar acts are held not to cover restaurant fixtures, the legislation is said to be in derogation of common law (*Swift & Co.* v. *Tempelos,* 178 N. C. 487 [101 S. E. 8, 7 A. L. R. 1581]), referred to as a "drastic measure" (*Johnson* v. *Kelly,* 32 N. D. 116 [155 N. W. 683]), and given strict construction. However, by decisions under the bulk sales law, the courts of this State are committed to a more liberal construction of the legislation with the obvious purpose of

rendering it effective in all classes of cases to which it was intended to apply. Its provisions were evidently enacted to protect business from perpetration of frauds. For the accomplishment of that purpose, we have given the act liberal construction. In *Watkins* v. *Angus,* 241 Mich. 690, Justice Wiest, speaking for the court, said:

"We consider the law remedial and to be given such construction as will effectuate its clear purpose."

See, also, *Patmos* v. *Grand Rapids Dairy Co.,* 243 Mich. 417.

In the case last cited Justice Potter quoted with approval from *Plass* v. *Morgan,* 36 Wash. 160 (78 Pac. 784), wherein it was held under the statute then in force in the State of Washington that restaurant business was within legislation of this class. In a later decision the Washington supreme court referring to the *Plass Case* said:

"It is true that a restaurant keeper, when he buys a ton of flour, does not buy it for the purpose of selling the article again in the same condition that it was in when he bought it, as does the ordinary merchant; but he does dispose of the same goods in a changed condition, and it is a business which from necessity calls for constant and continued purchases from wholesale dealers." *Everett Produce Co.* v. *Smith Bros.,* 40 Wash. 566 (82 Pac. 905, 2 L. R. A. [N. S.] 331, 111 Am. St. Rep. 979, 5 Ann. Cas. 798).

This court has held in an insurance case that the statement in the application for insurance that the building was to be used for stores and a residence was not a misrepresentation notwithstanding the building was occupied in part by a restaurant and bakery. Chief Justice Campbell said:

"A 'restaurant' has no more defined meaning (than the English word 'shop'), and is used indiscriminately for all places where refreshments can be had, from the mere eating-house or cookshop to the more common shops or stores, where the chief business is vending articles of consumption and confectionery, and the furnishing of eatables to be consumed on the premises is subordinate." *Richards* v. *Washington F. & M. Ins. Co.,* 60 Mich. 420, 426.

The items of property covered by the chattel mortgage in the instant case are clearly within the term "fixtures" as defined by our previous decisions. *Patmos* v. *Grand Rapids Dairy Co., supra.*

A review of the conflicting authorities found in other jurisdictions would not be of material assistance. It is a matter of common knowledge that, in the conduct of the restaurant business, certain items of food, such as butter, milk, cream, and oftentimes bread and pastries, are retailed for consumption by customers upon the premises in exactly the same form as purchased by the restaurateur for use in his business. Obviously it is a fair interpretation of the statute to give to the one furnishing these items of merchandise to the restaurateur the same protection as though furnished to a retail grocer. Under the policy adopted by this court in construing this type of legislation, it must be held that the restaurant business in the instant case comes within the quoted act. Such is the holding in *Sakelos* v. *Hutchinson Bros.,* 129 Md. 300 (99 Atl. 357). Appellee's title as the purchaser at the execution sale is valid as against appellant's claim asserted under the foreclosure of the chattel mortgage.

The decree of the circuit court is affirmed, with costs.

Clark, C. J., and McDonald, Potter, Sharpe, Fead, Wiest, and Butzel, JJ., concurred.