# Richmond

RAYMOND B. RANDOLPH, JR. v. COMMONWEALTH OF VIRGINIA.

April 24, 1961.

Record No. 5233.

Present, All the Justices.

The opinion states the case.

*Martin A. Martin* and *Clarence W. Newsome (Oliver W. Hill,* on brief), for the plaintiff in error.

*R. D. McIlwaine, III, Assistant Attorney General (A. S. Harrison, Jr., Attorney General,* on brief), for the Commonwealth.

EGGLESTON, C. J., delivered the opinion of the court.

Raymond B. Randolph, Jr., hereinafter called the defendant, was one of thirty-four Negroes arrested under separate warrants charging each with trespassing on the property of Thalhimer Brothers, Incorporated, in violation of Code, § 18-225, as amended. Each was convicted in the police court and upon appeal to the Hustings Court, with their consent and the concurrence of the court and the attorney for the Commonwealth entered of record, the several defendants were tried jointly by the court and without a jury. Upon consideration of the evidence the court adjudged that each defendant was guilty of trespass as charged and assessed a fine of $20 against each. To review this judgment each defendant has filed a petition for a writ of error. We have granted the defendant, Randolph, a writ of error and deferred action on the other petitions until this case has been disposed of.

Section 18-225 of the Code of 1950 (as amended by Acts of 1956, ch. 587, p. 942; Acts of 1958, ch. 166, p. 218) reads as follows:[1]

"§ 18-225. *Trespass after having been forbidden to do so.*—If any person shall without authority of law go upon or remain upon the lands or premises of another, after having been forbidden to do so by the owner, lessee, custodian or other person lawfully in charge of such land, or after having been forbidden to do so by sign or signs posted on the premises at a place or places where they may be reasonably seen, he shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be punished by a fine of not more than one hundred dollars or by confinement in jail not exceeding thirty days, or by both such fine and imprisonment."

On this appeal the defendant makes several contentions which over-

---

[1] This statute was further amended by the Acts of 1960, ch. 97, p. 113, and as so amended was recodified as Code, 1960 Replacement Volume, § 18.1-173, by the Acts of 1960, ch. 358, p. 448.

lap but may be fairly summarized thus: (1) The judgment is contrary to the law and the evidence in that there is no showing that the defendant was guilty of having violated the statute; (2) The statute as here applied violated the rights guaranteed to the defendant by the fourteenth amendment to the Constitution of the United States.

The undisputed facts are before us on the evidence heard in open court and a stipulation of the parties. Thalhimer Brothers, Incorporated, a privately owned corporation, operates a large department store in the city of Richmond. It operates lunch counters in the basement and on the first floor and a restaurant on the fourth floor. Negro patrons are served at one of the lunch counters in the basement. Only white patrons are served at the other lunch counters and in the restaurant. The separation of these facilities for serving white and Negro customers, respectively, is well known to the patrons of the store.

On February 22, 1960, the defendant and the thirty-three other Negroes who were convicted in this proceeding went to the Thalhimer store and attempted to obtain service at the facilities reserved for the use of white patrons. Because of their race they were refused service at these facilities.

Ben Ames, the personnel manager of the store and an employee of the corporation which operates it, talked with the defendant who was then at the entrance to the restaurant on the fourth floor, a facility reserved for white patrons. To use Ames' words, "I asked him to leave our store and explained to him, if he did not, that I would authorize the issuance of a warrant for his arrest." While the defendant made no reply to this request, he refused to leave the store. It is undisputed that Ames took this action at the direction of Newman Hamblett, the vice-president of Thalhimer Brothers, Incorporated, and the "director of operations" of the store. Ames did not identify himself to the defendant, who, however, did not question his authority. In the meantime, as the defendant testified, he had obeyed the command of Hamblett, whom he identified by name at the trial, to stand in line near the restaurant entrance and wait his turn. When the defendant refused to leave the store, Ames, at the further direction of Hamblett, procured the warrant of arrest which is the basis of this prosecution.

Viewed in the light most favorable to the Commonwealth, the prevailing party, the evidence is sufficient to sustain the judgment of the lower court that the defendant was guilty of violating the statute.

There is no evidence to support his contention that he was arrested because of his "race or color." On the contrary, the evidence shows that he was arrested because he remained upon the store premises after having been forbidden to do so by Ames, the duly authorized agent of the owner or custodian.

It is true that Ames did not identify himself or disclose his authority to the defendant. Aside from the fact that the statute does not require this, the evidence on behalf of the Commonwealth supports the inference that the defendant knew that Ames was a person in authority. As has been said, Ames testified that he asked the defendant to leave "our store" and explained to him that he would be arrested if he did not do so. The defendant did not question Ames' authority. It was obvious to him that Ames was acting in conjunction with Hamblett, the vice-president and director of operations of the store, whom the defendant apparently knew and identified by name. The defendant himself testified that he refused to leave the store after having been asked by Ames to do so.

Thus, it plainly appears from the evidence that the defendant violated the statute in that he willfully and purposely remained on the premises after he had been forbidden to do so by the owner's duly authorized agent.

The statute does not purport to be and is not a racial segregation law. It forbids "any person", irrespective of his race or color, "without authority of law" to "go upon or remain upon the lands or premises of another," after having been forbidden to do so. As we said in *Hall* v. *Commonwealth*, 188 Va. 72, 77, 49 S. E. 2d 369, 371 (appeal dismissed 335 U. S. 875, 69 S. Ct. 240, 93 L. ed. 418), "The only purpose of this law is to protect the rights of the owners or those in lawful control of private property." In that case we upheld the constitutionality of the statute as applied to a member of the sect of Jehovah's Witnesses who, after proper warning, refused to leave a private apartment building.

See also, *Henderson* v. *Trailway Bus Company*, D.C.Va.,     F. Supp.     (decided March 24, 1961, by Boreman, Circuit Judge, and Lewis and Bryan, District Judges), upholding the constitutionality of this statute as amended and recodified as Code, 1960 Replacement Volume, § 18.1-173.

The defendant does not contend that the statute is unconstitutional on its face. His argument is that the manner in which it was applied, under the circumstances of this case, amounted to a denial of

rights guaranteed to him by the Fourteenth Amendment. First, he says, since the store was "open to the public" and he was there as a "business invitee," the refusal to serve him because of his "race or color" was a denial of his constitutional rights. In recent years this same argument has been advanced in a number of jurisdictions and without exception has been rejected. See *State* v. *Clyburn*, 247 N. C. 455, 101 S. E. 2d 295; *State* v. *Avent*, 253 N. C. 580, 118 S. E. 2d 47; *Williams* v. *Howard Johnson's Restaurant*, 4 Cir. 268 F. 2d 845; *Slack* v. *Atlantic White Tower System, Inc.*, D.C.Md., 181 F. Supp. 124, affirmed 4 Cir., 284 F. 2d 746; *Griffin* v. *Collins*, D.C.Md., 187 F. Supp. 149; *Wilimington Parking Authority* v. *Burton*,    Del.   , 157 A. 2d 894.[2]

The holding in these cases is based upon the principle that the Fourteenth Amendment "erects no shield against merely private conduct, however discriminatory or wrongful" (*Shelley* v. *Kraemer*, 334 U. S. 1, 13, 68 S. Ct. 836, 842, 92 L. ed. 1161, 3 A. L. R. 2d 441), and that in the absence of statute the operator of a privately owned business may accept some customers and reject others on purely personal grounds. See *Alpaugh* v. *Wolverton*, 184 Va. 943, 36 S. E. 2d 906, where the principle was applied in the operation of a privately owned restaurant.

The controlling principle is thus stated in *State* v. *Avent, supra*: "In the absence of a statute forbidding discrimination based on race or color in restaurants, the rule is well established that an operator of a privately owned restaurant privately operated in a privately owned building has the right to select the clientele he will serve, and to make such selection based on color, race, or white people in company with Negroes or vice versa, if he so desires." 118 S. E. 2d, at page 51.

It is "well settled that, although the general public have an implied license to enter a retail store, the proprietor is at liberty to revoke this license at any time as to any individual, and to eject such individual from the store if he refuses to leave when requested to do so." Annotation, 9 A. L. R. 379. See also, Annotation, 33 A. L. R. 421. To the same effect see *Brookside-Pratt Mining Co.* v. *Booth*, 211 Ala. 268, 100 So. 240, 33 A. L. R. 417.

As was said in *Henderson* v. *Trailway Bus Company, supra*,    F. Supp.   , "[T]he occupant may lawfully forbid any and all persons, regardless of his reason or their race or religion, to enter or

---

[2] Reversed on other grounds. 365 U.S. 715, 81 S. Ct. 856, 6 L. ed. 2d 45 (April 17, 1961).

remain upon any part of his premises which are not devoted to a public use."

Hence, in the present case, the action of Thalhimer Brothers, Incorporated, in refusing to serve the defendant in its restaurant and in forbidding him to remain on its premises violated none of his constitutional rights.

■ The defendant next contends that when the owner of the restaurant, through its employee, procured the warrant for the defendant's arrest, this constituted State action to enforce a discriminatory rule or regulation of the restaurant contrary to the provisions of the Fourteenth Amendment. A similar argument was advanced and rejected in *State* v. *Clyburn, supra,* 101 S. E. 2d, at page 299; *State* v. *Avent, supra,* 118 S. E. 2d, at page 54; *Griffin* v. *Collins, supra,* 187 F. Supp., at pages 153, 154. See also, 47 Virginia Law Review 105, 119. Here the purpose of the judicial process is not to enforce a rule or regulation of the operator of the restaurant. Its purpose is to protect the rights of the proprietor who is in lawful possession of the premises and to punish the trespasser, irrespective of his race or color. See *Hall* v. *Commonwealth, supra,* 188 Va. 72, 49 S. E. 2d 369.

It would, indeed, be an anomalous situation to say that the proprietor of a privately owned and operated business may lawfully use reasonable force to eject a trespasser from his premises and yet may not invoke judicial process to protect his rights.

The judgment, being plainly right, is

*Affirmed.*