**DORSEY v. RECONSTRUCTION FINANCE CORP.**

No. 10551.

United States Court of Appeals, Seventh Circuit.

June 11, 1952.

Rehearing Denied July 1, 1952.

John J. Dowdle, Chicago, Ill., for appellant.

Lawrence T. Manning, Lee Walker, Chicago, Ill., for appellee.

Before MAJOR, Chief Judge, FINNEGAN and SWAIM, Circuit Judges.

SWAIM, Circuit Judge.

This is an appeal by the plaintiff, V. A. Dorsey, from a judgment of the District Court dismissing plaintiff's complaint and ordering that the defendant, the Reconstruction Finance Corporation, should recover from the plaintiff, on its counterclaim, the sum of $9,171.63. Plaintiff had sued to recover the value of certain collateral and money allegedly withheld from him by the RFC long after the note, on which the collateral had been deposited, had been paid. (Plaintiff also sued for damages resulting from the RFC's alleged mishandling of the collateral but during the trial the plaintiff expressly abandoned that count of the complaint.) The Court found that instead of the note having been paid, there was still due to the RFC the amount for which the Court entered judgment.

The Court found the source of plaintiff's indebtedness to be three thirty-day notes executed March 26, 1931, to the National Bank of the Republic of Chicago. These notes were assigned on May 1, 1933, after maturity, to the RFC. Two of these notes, one for $85,694.45, and the second for $5,-689.71, were executed by the plaintiff. The third note, for $1,329.69, was executed by Victor A. Dorsey & Co., but was personally guaranteed by the plaintiff.

The collateral in issue was pledged on the $85,694.45 note. That note provided specifically that this collateral was deposited and pledged as "security for the payment of this note and of all other liabilities" of the plaintiff to the bank or to the legal holder of the note.

The counterclaim of the RFC also sought judgments on two small judgments in the principal amount of $1,000 which it had theretofore recovered against the plaintiff. After the RFC acquired these notes in 1933 it had held the securities pledged as collateral, selling portions of them from time to time, and had credited dividends, interest payments and the proceeds of sales from the collateral on such of the plaintiff's notes and obligations as it saw fit. At the time of the trial all of the plaintiff's obligations to the RFC had been fully paid except a balance of $9,171.63 on the $85,000 note, and judgment was entered accordingly.

Plaintiff, in appealing from this judgment, challenges the Court's conclusions and insists that the RFC then owed him $56,309.21. To sustain his contention the plaintiff relies primarily on three matters. First, plaintiff claims that $11,000 of the $85,000 note was unenforceable because it represented a loan to the plaintiff by the bank secured by shares of the bank's capital stock in violation of 12 U.S.C.A. § 83, which provides that a national bank shall not make a loan on the security of shares of its own capital stock. The plaintiff, in 1930, purchased 60 shares of the capital stock of the bank. The purchase price of these shares was $11,000. Being then without funds, the plaintiff gave the bank his note for $11,000 as evidence of the debt and secured the payment of the note by depositing as collateral the purchased shares. Subsequently this $11,000 was consolidated with other debts of the plaintiff in the $85,000 note and the bank stock was deposited as part of the collateral on the consolidated debt.

The Supreme Court has held that loans made in violation of this statute are not void, as plaintiff contends, but are enforceable. Deitrick v. Greaney, 309 U.S. 190, 60 S.Ct. 480, 84 L.Ed. 694, involved that part of this statute which prohibits a national bank from purchasing or holding shares of its capital stock. In that case a bank, having illegally purchased shares of its own stock, devised and carried out a scheme for the purpose of concealing its ownership. To accomplish this the bank

took the note of one of its directors with the secret understanding that there was to be no liability on the maker of the note. The note was then substituted for the stock in the assets of the bank and the stock was assigned to one of the directors on the agreement and understanding that it continue to be the property of the bank. The receiver of the bank brought suit against the maker of the note who contended that the note was not enforceable because the transaction was in violation of the statute. However, the Court held the director liable on his note saying, 309 U.S. at page 195, 60 S.Ct. at page 482, 84 L.Ed. 694, of the opinion:

"The obvious purpose of prohibiting the purchase by a bank of its own stock is to prevent the impairment of its capital resources and the consequent injury to its creditors in the event of insolvency. * * * These purposes would be defeated and the command of the statute nullified if a director or officer or any other by his connivance could place in the bank's portfolio his obligation good on its face, as a substitute for its stock illegally acquired, and if he remained free to set up that the obligation was, in effect, fictitious, intended only to aid in the accomplishment of the injury at which the statute is aimed."

Then, 309 U.S. on page 196, 60 S.Ct. on page 483, 84 L.Ed. 694, the Court also said:

"If respondent were free to set up the unlawful agreement as a defense and thus cast the loss from the unlawful stock purchase on the creditors of the bank in receivership, he would be enabled to defeat the purpose of the statute by taking advantage of an agreement which it condemns as unlawful. That, we think, the law does not allow."

In D'Oench, Duhme & Co. v. Federal Deposit Insurance Corporation, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 477, the Supreme Court held that an accommodation note, given to a bank to enable it to carry the note in its assets instead of the defaulted bond which the maker of the note had sold to the bank, was enforceable by the FDIC which made a loan to the bank and which had acquired the accommodation note as part of the collateral securing the loan.

In Reconstruction Finance Corporation v. McCormick, 7 Cir., 102 F.2d 305, this Court held that a loan by the RFC to a bank was not void although the loan was made in violation of 15 U.S.C.A. § 605d, which prohibited loans by the RFC to financial institutions with officers or directors who were also directors of the RFC. This Court, after reviewing many decisions, there said, 102 F.2d at page 322:

"The rule which runs through all of these decisions is this,—Contracts made in violation of prohibitions of statutes similar to section 207 (Section 605(d)) are not void."

■ We must hold here that the $11,000 loan to Dorsey, although secured by shares of the bank's capital stock in violation of 12 U.S.C.A. § 83, was not void but was enforceable. It was, therefore, proper that this amount and the interest thereon were included by the RFC in its account against Dorsey.

The second issue presented by Dorsey involved the payment of principal and interest on the note for $5,689.71 by the application by the RFC of the proceeds of the collateral deposited on the $85,000 note. Dorsey contends (1) that the $5,000 note was barred by the statute of limitations, and (2) that he never authorized the application of the proceeds of the collateral to the payment of this note. It is true that the statute of limitations had run on this note before this action was commenced and it is also true that the plaintiff's collateral had all been deposited on the $85,000 note. Dorsey testified that he had never authorized the application of the proceeds of his collateral on the payment of the $5,000 note.

■ The record here requires the finding that Dorsey had authorized the application by the RFC of the proceeds of the collateral to the payment of this $5,000 note. This note executed by Dorsey expressly authorized the bank or the holder of the note to "at any time, either before

or after the maturity of this note, appropriate and apply" any property of the maker in the hands of the bank or legal holder of the note "upon this note, without protest, or demand upon, or notice of any kind to anyone," and to "make such appropriation and application as and in such proportion as said bank or legal holder may deem best." As we have shown above, the $85,000 note on which the collateral was deposited also expressly provided that the collateral was deposited and pledged as security for the payment of that note and "of all other liabilities" of the maker "to said Bank, or the legal holder of this note * * *."

But, Dorsey says, this $5,000 note was barred by the statute of limitations. At the time Dorsey pleaded the statute of limitations to this note there was a balance owing of only $1.00 on the principal and $686.30 interest. However, all of this balance was paid in full by the liquidation of collateral prior to the time of the trial of the case. Since this note was paid in full, we are left with only the question of whether the collateral could legally be applied to the payment of the note after an action on the note was barred by the statute of limitations.

The Illinois Statute of Limitations, Illinois Revised Statutes, 1951, c. 83, § 17, bars only the remedy. It provides that actions on notes "shall be commenced within ten years next after the cause of action accrued, but if any payment or new promise to pay shall have been made, in writing, on any * * * note * * * within or after the said period of ten years, then an action may be commenced thereon at any time within ten years after the time of such payments or promise to pay."

It is generally held that such a statute of limitations does not go to the substance of a right, but only to the remedy, and then only if specially pleaded by the debtor. 34 Am.Jur. § 400, page 314. It is also generally held that where an action on a note has been barred by the statute of limitations, the holder may still apply collateral pledged to it to secure its payment. 34 Am.Jur. § 403, page 317. See also Fountain v. Bookstaver, 141 Ill. 461, 468, 31

N.E. 17; and Illinois Bankers Life Assurance Co. v. Dunas, 333 Ill.App. 192, 197, 77 N.E.2d 54.

We can only conclude that the application of the collateral to the payment of the note for $5,689.71 was expressly authorized by Dorsey and that the authority to so apply the collateral was not affected by the running of the statute of limitations.

◼ Dorsey's third contention is that a charge-back of $9,480.45 made against his account by the RFC was not authorized. This charge-back was made because of the following facts. In 1931 Dorsey had assigned to the bank, as collateral on the $85,000 note, the claim of the Dorsey Company against the Arkansas National Gas Corporation for engineering work done by the Dorsey Company. Dorsey, the plaintiff, was President and Treasurer, and his wife was Secretary, of the Dorsey Company. Dorsey claimed that at the time of the assignment, the Dorsey Company owed him personally, for loans, advances and salary, approximately $55,000. In December 1931 Dorsey settled the claim against the Arkansas Company for $32,000, receiving the $32,000 in the form of a draft payable to the Dorsey Company. Dorsey took the draft to the First National Bank and there exchanged it for a check of that bank for $32,000 payable to the bank then holding Dorsey's $85,000 note. Dorsey then took this check to the latter bank and applied $30,000 of it as a payment on his $85,000 note and deposited the balance in his personal account.

After the $30,000 credit was endorsed on Dorsey's note and entered on the books of the bank, two creditors of the Dorsey Company brought an action against the bank as garnishee, claiming that the account against the Arkansas Company and the proceeds of that claim, including the $30,000 which was credited by the bank on Dorsey's personal obligation, actually belonged to the Dorsey Company and was subject to the claims of the two creditors of that company. The trial court in that case found for the creditors and ordered the bank to pay their claims. This decision was affirmed, Dorsey v. Central Republic Trust Co., 277 Ill.App. 126. The charge-

back here in question was the amount that the Dorsey account on the $85,000 note was then debited—the amount the bank paid back to the two Dorsey Company creditors in compliance with the court order.

Dorsey insists that the bank, having once entered the $30,000 credit, had no right to debit the account for that part of the $30,000 which the bank, by court order, was compelled to return to the creditors of the Dorsey Company. With this contention we cannot agree.

The $30,000 credit was entered by the bank, of course, on the assumption that the bank check given it by Dorsey could be applied as a credit on the Dorsey account. The factual result of this transaction was the same as if the bank, on receipt of a check for $20,519.55, had, through an error, entered a credit for $30,000. How could it be seriously contended that such an error on the bank's books could not be rectified?

The situation here is not comparable to one where a debtor has suffered a loss by a creditor's negligence in presenting a check for payment or in pressing his claim on a note and where, on account of his negligence, the creditor has failed to collect the proceeds which by diligence he could have collected. Here the bank was not negligent and the debtor, Dorsey, was not injured in any way. Dorsey is now attempting to avoid payment of that part of his just debt by a mere technicality. Dorsey has cited us to no authority, and we have found none, which compels us to sanction the avoidance of the debt in this manner. We hold that it was proper to debit Dorsey's account, as of the time the bank paid the two Dorsey Company creditors, an amount equal to that part of the $30,000 which the bank was so compelled to pay.

Our disposition of the above questions makes it unnecessary for us to consider whether the facts here showed an account stated, as the RFC contended.

■ The facts found by the District Court are supported by admissions made by Dorsey in his pleadings, by Dorsey's admissions under Rule 36 of the Federal Rules of Civil Procedure, 28 U.S.C.A., by a stipulation of facts and by evidence introduced by Dorsey. It was not necessary for the RFC to prove by witnesses at the trial that which Dorsey had so admitted. Admissions under Rule 36 stand in the same relation to the case that sworn evidence bears. Batson v. Porter, 4 Cir., 154 F.2d 566, 568; Beasley v. United States, 81 F.Supp. 518, 528.

■ Since Dorsey still owes a balance on the $85,000 note, the holder of the note cannot be compelled to surrender any of the collateral pledged to secure payment of the note.

The judgment of the District Court is affirmed.