Charles E. WILLIAMS, Appellant,

v.

HOWARD JOHNSON'S INC. OF WASH-
INGTON, Appellee.

No. 8931.

United States Court of Appeals
Fourth Circuit.

Argued June 11, 1963.

Decided Sept. 17, 1963.

Charles E. Williams, pro se.

Richard A. Mehler, Washington, D. C. (James H. Simmonds, Arlington, Va., on brief), for appellee.

Before SOBELOFF, Chief Judge, and HAYNSWORTH and J. SPENCER BELL, Circuit Judges.

SOBELOFF, Chief Judge.

As in an earlier appeal, 268 F.2d 845 (1959), Charles E. Williams is here seeking review of an order dismissing an action brought by him against Howard Johnson's Inc. to recover damages under the Civil Rights statutes, Rev.Stat. § 1979, 42 U.S.C.A. § 1983 [1] and Rev.Stat. § 1980(3), 42 U.S.C.A. § 1985(3).[2] The present action arises from the defendant's refusal to serve him at its restaurant in Alexandria, Virginia, on November 5, 1959. A civil penalty for denying him the full enjoyment of the restaurant accommodations is also prayed under the Civil Rights Act of March 1, 1875, ch. 114, §§ 1 & 2, 18 Stat. 335.[3] The complaint alleged that the plaintiff was denied service, not because of any private prejudice on the part of the restaurant manager, but because of an existing state policy and custom which required the exclusion of Negroes from such facilities. It further alleged that the participation of the defendant in carrying out this state policy and custom of racial segregation constituted both a deprivation of a constitutionally protected right and also an aiding or abetting of such a practice. The plaintiff's basic contention is that he is entitled to recover for this discriminatory denial of service, because it was the product of state action and falls within the prohibition of the Fourteenth Amendment and the Civil Rights laws. The District Court held to the contrary and dismissed the complaint. Williams v. Howard Johnson's Inc. of Washington, 210 F.Supp. 295 (E.D.Va.1962).

The fundamental question in this appeal is whether the record discloses such evidence of state participation and involvement in the discriminatory conduct as to require us to hold that the District Court was in error in determining the

1. 42 U.S.C.A. § 1983 provides:
 "Every person who, under color of any statute * * * custom, or usage, of any State * * * subjects * * * any citizen of the United States * * * to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

2. 42 U.S.C.A. § 1985(3) provides:
 "If two or more persons in any State * * * conspire * * * for the purpose of depriving, either directly or indirectly, any person * * * of the equal protection of the laws * * * whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages * * *."

3. The Act of 1875 provides in pertinent part:
 "[A]ll persons within the jurisdiction of the United States shall be entitled to the full and equal enjoyment of the accommodations * * * and privileges of inns, public conveyances * * * theaters, and other places of public amusement; subject only to the conditions and limitations established by law, and applicable alike to citizens of every race and color, regardless of any previous condition of servitude.
 "SEC. 2. That any person who shall violate the foregoing section by denying to any citizen, except for reasons by law applicable to citizens of every race and color, and regardless of any previous condition of servitude, the full enjoyment of any of the accommodations * * * in said section enumerated, or by aiding or inciting such denial, shall, for every such offense, forfeit and pay the sum of five hundred dollars to the person aggrieved thereby, to be recovered in an action of debt, with full costs * * *."

"denial of service was a voluntary act on the part of the manager of the restaurant."

However, a preliminary procedural question needs to be considered. There is controversy as to what properly constituted the record in the District Court upon which the case should have been decided there, and what constitutes the record before us. This dispute arises from a disagreement between the parties as to whether the District Court's hearing on June 19, 1962, was on plaintiff's motion for summary judgment or was a trial on the merits. At this hearing defendant made a motion to dismiss the complaint for failure to state a claim upon which relief can be granted. The plaintiff contends that the motion for summary judgment which he served on June 13, 1962, six days before the date set for a hearing, and which he renewed at the hearing, was a submission of his case on "the pleadings, depositions, answers to interrogatories, and admissions on file," Rule 56(c), Fed.R.Civ.P.,[4] rather than on defendant's admissions alone which, the plaintiff says, were the real basis for the trial court's findings of fact. The defendant urges that the motion for summary judgment was not properly before the court since it was not "served at least 10 days before the time fixed for the hearing" as is required by Rule 56(c).[5]

It is the defendant's position that the trial court properly disposed of the case on the merits, with the record limited to the defendant's admissions and the few exhibits it offered in evidence.[6] This theory is predicated on plaintiff's failure to offer in evidence at the hearing certain depositions and answers to interrogatories upon which he appears to have relied. Plaintiff counters by saying that these items were before the court under the broader admissibility standards of Rule 56(c) and this was his reason for offering no other testimony or proof. Thus, when the trial court invited both sides to present their evidence (the court postponing decision on all motions until after it had heard the evidence), the plaintiff responded by submitting his case on "the record." He apparently presumed that this would include the elaborate depositions, interrogatories and admissions obtained through pre-trial discovery devices. But the court thereafter found that plaintiff had failed to satisfy his burden of proof by resting his case on the admissions and declining to "call a single witness or offer in evidence the depositions or any of the answers to interrogatories to prove the allegations of his complaint."

 It is ordinarily within the discretion of the trial court to refuse to pass on a motion for summary judgment and to proceed with a trial on the merits where the movant first requests the court to rule thereon at the hearing or where he has not given the opposing party the requisite notice.[7] To grant a motion for

4. A 1963 amendment of Rule 56(c) added "answers to interrogatories," but this amendment appears merely to have codified pre-existing practice and case law. See, e.g., Champlin v. Oklahoma Furniture Mfg. Co., 269 F.2d 918 (10th Cir. 1959).

5. To further complicate this procedural issue there is disagreement as to what the parties understood was resolved at a pretrial conference on February 9, 1962, when the hearing date was set for June 19, 1962. The plaintiff says that he made clear his intention to file a motion for summary judgment and understood that it would be heard on June 19. He relies on a letter written by defense counsel which acknowledges that mention was made of the possibility of a motion for summary judgment. But defense counsel adds that it was nevertheless made clear that all motions would have to be filed more than twenty days prior to June 19. The plaintiff asserts that under a local rule of the court the motion for summary judgment was filed on time, but the basis for this contention is obscure. Unfortunately no order was made following the February conference as contemplated by Rule 16, Fed.R.Civ.P.

6. The defendant offered in evidence only its lease to the restaurant premises and the complete record in the first Williams case.

7. Woods v. Robb, 171 F.2d 539, 541 (5th Cir. 1948); see 6 Moore Federal Practice, par. 56.15(6) (2d ed. 1962).

summary judgment the court must be satisfied that the pleadings, depositions, admissions and answers to interrogatories show "that there is no genuine issue as to any material fact." Rule 56(c), Fed.R.Civ.P. Where the record is such that the court is in doubt, it has the discretion to postpone consideration of the motion for summary judgment until after a hearing on the merits. The principles governing summary judgment procedure should be applied in a common sense manner to the realities of the litigation at hand. Particularly is this true where the trial court is called upon to decide a constitutional question on summary judgment on a potentially inadequate factual presentation.[8]

Irrespective, however, of the procedural dispute, the central question which the District Court decided, and which is the heart of this appeal, remains the same—whether the plaintiff has established that the refusal to serve him constituted "state action," and not merely private conduct. The opinion of the trial court recites that "[t]he admissions thus made do not sustain the plaintiff's allegations. * * * Even if the Court were to consider the answers to the interrogatories and the depositions (which were not made a part of the record) as evidence in this case, this would not cure the paucity of the plaintiff's proof."

██ We would be loath to nonsuit the plaintiff on narrow procedural grounds if we thought the record disclosed a claim upon which he was entitled to relief. Our review takes into account, broadly, the defendant's admissions,[9] the restaurant manager's deposition,[10] the answers to interrogatories[11] and the pleadings.

Upon the entire record we think it is indisputable that plaintiff was denied service for the sole reason that he is a Negro. The response of the defendant to one of plaintiff's allegations that it is without knowledge sufficient to form a belief that he is a Negro is utterly evasive and frivolous, in light of the earlier protracted litigation between the parties and his appearance with the defendant's counsel in court, where they could not have failed to observe that he is a Negro. Such a response could not have been seriously intended. These and similar denials are contradicted by the restaurant manager's deposition wherein he testified that he refused to serve Williams because he felt that it was better not to serve a Negro. Further acknowledgements were elicited to the effect that the plaintiff was not personally distasteful to the manager; that he (the manager) feels no prejudice against Negroes merely because there are some undesirable ones; that he was not in jeopardy of losing his job if he did serve a Negro; and that the decision to grant or deny service to Negroes was left by the restaurant owners to the individual manager's discretion.

8. See Pacific American Fisheries v. Mullaney, 13 Alaska 362, 191 F.2d 137, 141 (9th Cir. 1951).

9. Under Rule 36, Fed.R.Civ.P., admissions in answer to a request from the other party stand in the same relation to the case as sworn testimony. Ark-Tenn Distributing Corp. v. Breidt, 110 F.Supp. 644, 646 (D.N.J.1953), aff'd, 209 F.2d 359 (3d Cir. 1954); Dorsey v. Reconstruction Finance Corp., 197 F.2d 468, 472 (7th Cir. 1952); see 4 Moore, Federal Practice, par. 36.09 (2d ed. Supp.1962).

10. Depositions may be used at trial for any purpose under Rule 26(d)(2), Fed.R.Civ.P., provided the deposition was of an officer, director, or managing agent of a corporation at the time the deposition was taken and the corporation is an adverse party. See 4 Moore, Federal Practice, par. 26.29 (2d ed. 1962); see, e. g., Spector v. El Ranco, Inc., 263 F.2d 143 (9th Cir. 1959). Of course, the deposition of the plaintiff cannot be regarded as part of the record because it is not admissible under Rule 26(d) unless the conditions of subsection (3) are met. See 4 Moore, Federal Practice, par. 26.30 (2d ed. 1962).

11. Rule 33, Fed.R.Civ.P., specifically provides that answers to interrogatories "may be used to the same extent as provided in Rule 26(d) for the use of the deposition of a party." See 4 Moore, Federal Practice, par. 33.29 (2d ed. 1962).

But establishing that the plaintiff was denied service because he was a Negro still does not meet the crucial test of state involvement. In this regard plaintiff contends that the manager's decision was induced by an existing state custom and policy. As support he points to: (1) certain state statutes in other contexts requiring racial segregation, such as the commitment of epileptics, Va.Code Ann. § 37–182, the commitment of prisoners, id. § 53–42, the maintenance of separate poll tax lists for the two races, id. § 24–120, the maintenance of separate real and personal property books by the tax assessor, id. §§ 58–790 & 58–880, and racial distinctions in the licensing of fraternal benefit societies, id. § 38.1–597; (2) a long-standing state custom of treating Negroes as social inferiors to Caucasions as manifested by a state rule of decision that making reference to a white man as a Negro is slanderous per se; [12] (3) a certain statement made by the Fairfax County Commonwealth's Attorney to a police officer, reported in a Washington, D. C., newspaper, which defendant's manager conceded he had heard of "by word of mouth," to the effect that the prosecutor considered it against the law of Virginia for a Negro juror to be accommodated in the local courthouse cafeteria, and that the prosecutor ordered the juror's money returned because "Virginia law prohibits integrated dining."

Upon this basis the plaintiff argues that the failure of the state to provide a remedy for private discriminatory conduct, akin to the federal Civil Rights statutes, constitutes an abdication by the state of its responsibility to insure its citizens the equal protection of the laws.

■ The listed allegations may well be true. However, they do not, either separately or in the aggregate, present an actionable claim for damages for abridgement of individual rights "unless to some significant extent the State in any of its manifestations has been found to have become involved in it." Burton v. Wilmington Parking Authority, 365 U.S. 715, 722, 81 S.Ct. 856, 860, 6 L.Ed.2d 45 (1961). The existence of state statutes perpetuating racial discrimination in areas other than accommodation at restaurants is not conclusive since the Virginia Supreme Court of Appeals has flatly declared it to be the law that a restaurateur, unlike the proprietor of an inn or hotel, may select his patrons as he desires, accepting some and rejecting others, even to the point of basing his personal choice on purely racial grounds, but that the law does not compel him to segregate customers according to race.[13]

■ Beyond this, to accept plaintiff's proposition that the failure of the state to provide a remedy for the redress of complaints of deprivation of the equal protection of the law would be totally to emasculate existing case law. Shelley v. Kraemer, 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161 (1948), holds that there is no violation of the equal protection clause unless there is some implementation of the private discrimination by the state's use of its legal powers. The doctrine was expressly reaffirmed more recently in Burton v. Wilmington Parking Authority, 365 U.S. 715, 722, 81 S.Ct. 856, 860, 6 L.Ed.2d 45 (1961). By no stretch of the Court's holding is state judicial enforcement of private restrictive covenants, sought and denied in the Shelley case, on a parity with state inaction and failure to create a remedy for private discriminatory conduct. We do not justify discriminatory private conduct, nor approve the state's failure to forbid it, but it is not our province as a federal court to enact legislation which might be entirely appropriate for the state or for the Congress; nor may we as a tribunal inferior to the Supreme Court undertake to review the correctness of its decisions

---

12. Plaintiff cites Spencer v. Looney, 116 Va. 767, 82 S.E. 745 (1914), and Mopsikov v. Cook, 122 Va. 579, 95 S.E.2d 426 (1918), for this proposition.

13. See Alpaugh v. Wolverton, 184 Va. 943, 36 S.E.2d 906 (1946); Randolph v. Commonwealth, 202 Va. 661, 119 S.E.2d 817 (1961).

from the Civil Rights Cases, 109 U.S. 3, 3 S.Ct. 18, 27 L.Ed. 835 (1883), down to the most recent pronouncement in Lombard v. State of Louisiana, 373 U.S. 267, 83 S.Ct. 1122, 10 L.Ed.2d 338 (1963), which recognize that unless there is state involvement in the conduct complained of the Fourteenth Amendment does not proscribe it. We may say what Judge Soper said for our court, commenting on racial discrimination by a private hospital, without state involvement:

> "They [the plaintiffs] do not argue that the exclusion of qualified physicians solely because of their race from an institution devoted to the care of the sick is indefensible, as they might well do if this court was the proper forum to determine the ethical quality of the action. As a Federal court we are powerless to take into account this aspect of the case. We may not interfere unless there is State action which offends the Federal Constitution." Eaton v. Board of Managers of James Walker Memorial Hospital, 261 F.2d 521, 525 (1958).

Turning to the evidence of a more positive nature, relied upon by the plaintiff to show state participation in the discrimination practiced upon him, we have the reported statement of the county prosecuting officer. This comes closer but is hardly clear enough, without a further showing, to compel the inference urged by the plaintiff. A newspaper report of a statement by a state official made in unrelated circumstances to the effect that integrated dining is viewed by him as illegal in Virginia does not necessarily represent such state action as to bring this case under the condemnation of the Fourteenth Amendment. We are not told whether the Commonwealth Attorney merely declared his views on an isolated situation or an intention to coerce or prosecute those who serve Negroes as well as whites without segregating them; nor was there any exploration of the influence this declaration may have had in the instant case.

But a full inquiry into the circumstances would be in order; it is not such a conclusion as the court should be required to make upon a motion for summary judgment, since the sketchy facts leave much to debatable inference. The case before us may or may not, depending upon the ultimate inferences from a more complete factual inquiry, fall within the rationale of Lombard v. State of Louisiana, 373 U.S. 267, 83 S.Ct. 1122, 10 L.Ed.2d 338 (1963), where certain highly publicized announcements by the Superintendent of Police and the Mayor of New Orleans were treated as the equivalent of a municipal ordinance.

█ Because the court was not bound upon the record before it to draw the inferences for which the plaintiff contends, the denial of the motion for summary judgment cannot be reversed; but there appears to have been a good faith misunderstanding as to the scope of the hearing on June 19, 1962. The defendant's counsel say they came unprepared for argument on the plaintiff's motion for summary judgment, while the plaintiff asserts that he was unprepared for a hearing on the merits. The judgment of the District Court will not be affirmed or reversed, but vacated and remanded so that both parties may have an opportunity for a full hearing on the merits after proper notice. If the plaintiff has any additional evidence to offer bearing on the prosecutor's statements or activities, or if he has additional proof of a state action pertinent to the subject matter, he should be allowed to present it and the defendant should have an opportunity to meet it. If the plaintiff fails to apply to the District Court for such a hearing within 30 days from the date of this decision, the District Court may dismiss the action.

Remanded.